

FILED
DEC 17 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

DAVID GUTIERREZ SANDOVAL,          )
                                   )
                    Petitioner,    )
V.                                 )        Criminal No. 1:09CR31
                                   )        Civil No. 1:10CV559
UNITED STATES OF AMERICA,          )
                                   )
                    Respondent.    )
_____)

### MEMORANDUM OPINION

This case is before the Court on Petitioner David Gutierrez Sandoval's Motion Under 28 U.S.C. § 2255 to Vacate, Set Side, or Correct Sentence.

On January 15, 2009, a grand jury in the Eastern District of Virginia indicted David Gutierrez Sandoval on charges of conspiracy to distribute 500 or more grams of cocaine and a quantity of marijuana, in violation of 21 U.S.C. § 846 (Count One); possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(C) (Count Three).

On March 31, 2009, a jury trial commenced in the United States District Court in Alexandria. Sandoval was represented at

trial by Shannon S. Quill and William Todd Watson, Assistant Federal Public Defenders.

During the Spring of 2008, law enforcement officials arrested an individual for distribution of narcotics who was in possession of approximately five pounds of marijuana and three ounces of cocaine. The arrested individual cooperated with the law enforcement officials and became a Confidential Informant (CI). The CI informed law enforcement that the cocaine and marijuana were distributed to him by an individual known as "Mexicano," who was later identified as David Gutierrez Sandoval, the Petitioner. The CI stated that he had been dealing with the Petitioner from December 2007 until his arrest. During this time frame, the Petitioner regularly sold the CI narcotics two to three times per week, with each transaction involving between four and six pounds of marijuana and two to three ounces of cocaine. The CI further stated that he initially did not have enough money to purchase the drugs and so he provided the Petitioner with two handguns and some jewelry as collateral for the initial purchases with the promise to pay back the Petitioner from the proceeds of the sale of the marijuana and cocaine. This drug debt was to be paid off over a period of time, with the Petitioner keeping the guns and jewelry until the debt was paid off in full.

On May 8, 2008, at the direction of law enforcement, the CI met with the Petitioner in Dale City, Virginia and paid the Petitioner $4,500.00 towards the previously acquired drug debt. During this transaction, the Petitioner and CI discussed future drug deals. This meeting and the subsequent ones were monitored and recorded by law enforcement. Transcripts of the recorded consensually conversations were translated from Spanish into English and at least one transcript was introduced into evidence.

On May 13, 2008, at the direction of law enforcement, the CI again met with the Petitioner and made a $2,700.00 partial payment to the Petitioner towards the previously acquired drug debt. During this transaction, the Petitioner and the CI again discussed the importation of multiple kilograms of cocaine into Virginia for distribution.

On May 19, 2008, in Dale City, Virginia, the Petitioner and an unindicted co-conspirator (UCC) met with the CI to further discuss the importation of cocaine into Virginia. Also during this meeting, the CI provided the Petitioner with the final $1,100.00 that he owed the Petitioner on the pre-existing drug debt. In return, the Petitioner returned the Smith and Wesson 9mm pistol that the Petitioner had been holding as collateral for the drug debt.

On June 26, 2008 in Dale City, Virginia, the Petitioner again met with the CI and delivered to the CI the Heckler and Koch .40 caliber pistol that was previously held by the Petitioner as collateral on the drug debt.

On October 2, 2008, in Dale City, Virginia, the Petitioner sold the CI three ounces of cocaine for $2,700.00. During this transaction, the Petitioner informed the CI that he could sell him one kilogram of cocaine.

On October 7, 2008, the Petitioner contacted the CI regarding the pre-arranged sale of one kilogram of cocaine to the CI. The Petitioner said that the kilogram was short by four ounces but the CI agreed to go through with the deal anyway. Prior to the deal, a co-conspirator, later identified as Gabriel Solis, was observed acting as a lookout for the Petitioner. Solis was detained and interviewed. Solis testified that the Petitioner offered him $500 to assist him and gave him a red and black lunch bag containing cocaine. As the Petitioner's paid underling, Solis was instructed to secret the red and black lunch bag in his car and drive the Petitioner to the pre-arranged location for the drug transaction with the CI. While at the prearranged location, Solis acted a lookout during the drug transaction. Prior to the deal, law enforcement stopped Solis and searched the car revealing a red and black lunch bag containing powder cocaine. A search warrant executed at the

Petitioner's residence revealed approximately one ounce of cocaine in the Petitioner's bedroom.

The Petitioner did not testify at trial. However, the defense called two government witnesses, FBI Special Agent Vorndran and Detective Fernauld and introduced items into evidence.

Prior to submitting the case to the jury, the Court granted the defendant's Rule 29 Motion on Count Three, the second gun count. Thereafter, on April 1, 2009, the jury returned a verdict of guilty on Counts One (drug conspiracy) and Two (the first gun count).

In advance of his sentencing, the Petitioner objected to some of the findings in the Pre-Sentence Report (PSR), including drug weight and role in the offense. On June 22, 2009, the Court found the guidelines to be properly assessed at range of 121 to 150 months on the drug conspiracy count plus the mandatory 60 months on the § 924(c) count. The Court imposed a variance sentence of ten years and sentenced Sandoval to the statutory mandatory minimum term of imprisonment for each count of conviction: 60 months' imprisonment on Count One followed by a consecutive term of 60 months' imprisonment on Count Two. The Petitioner did not appeal his conviction or sentence to the Fourth Circuit Court of Appeals.

On or about January 8, 2010, Sandoval mailed a *pro se* motion, styled as "Appellant Petitioner Motion Pursuant to Titled 28 U.S.C. § 753 Requesting Trial and Sentencing Transcript Free of Cost." In the Motion, Sandoval requested an order authorizing him to obtain trial and sentencing transcripts free of cost, and a motion to proceed *in forma pauperis*. The United States filed a response in opposition to the motion for free transcripts.

Thereafter, on May 27, 2010, Sandoval filed a second, almost identical motion requesting trial and sentencing transcripts free of cost, a second motion to proceed *in forma pauperis*, and this motion to vacate his sentence under 28 U.S.C. § 2255.

In Sandoval's § 2255 motion, he alleged a number of grounds why his sentence should be vacated, set aside, or corrected. However, the Petitioner failed to allege any relevant or supporting facts entitling him to collateral relief from his conviction. Morever, the supporting "Memorandum of Law & Authorities in Support of Petitioner's 2255 And in Support the 'Exception Clause'" failed to allege any such facts. Instead, the memorandum contains a legal argument, with citation to case law, which refers to an argument based upon the "exception Clause" of 18 U.S.C. § 924(c). The essence of this argument is difficult to distill from the pleading itself. Presumably, the

argument is that the sentence on the gun count should be vacated.

The grounds for Sandoval's § 2255 are as follows and will be addressed individually below:

(1) insufficient "evidence to convict based on <u>Baely</u> [sic] <u>v. U.S.</u>, 516 U.S. 137 (1995)";

(2) ineffective assistance of counsel because his attorney deprived him of his right to testify;

(3) ineffective assistance of counsel because his attorney failed to request the two level reduction for acceptance of responsibility;

(4) ineffective assistance of counsel because his attorney failed to object to the reasonable doubt jury instructions; and

(5) ineffective assistance of counsel because his attorney advised him that if he appealed the conviction and won, the case would go back to the same judge who will "double" his sentence.

"Under 28 U.S.C. §2255, a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." <u>Cameron v. United States</u>, 2008 WL 1984254,

*1 (E.D.Va. 2008) (citing 28 U.S.C. §2255; Hill v. United States, 368 U.S. 424, 426-27 (1962)). Petitioner bears the burden of proof by a preponderance of the evidence. Id. at *1 (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)). See also, Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967).

It is well settled that conclusive allegations are insufficient to entitle a petitioner to relief under section 2255. Blackledge v. Allison, 431 U.S. 63, 74 (1977); Machibroda v. United States, 368 U.S. 487, 495-96 (1962). When a petitioner files a 2255 motion, he must set forth facts which entitle him to relief. O'Malley v. United States, 285 F.2d 733, 735 (6th Cir 1961). Bare, conclusory allegations of ineffective assistance are insufficient to warrant habeas relief. See e.g. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992).

Here, Petitioner claims various errors from the trial and sentencing and characterizes the majority of them as claims of ineffective assistance of counsel. At least two of the claims: (1) insufficient evidence to convict on the gun count and (2) the "exception clause"of Section 924(c) should have been, but were not, raised on direct appeal.

"A collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 164 (1982). Most claims that do not assert constitutional or jurisdictional errors are

not cognizable on collateral review. Section 2255 applies to non-jurisdictional claims based on a federal statute or rule only if the claim alleges a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962).

Since neither of these alleged errors were raised on direct appeal, the proper standard of review for "collateral relief based on trial errors for which no contemporaneous objection was made, a convicted defendant must show both: (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Frady, at 167 (affirming "the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."); United States v. Bousley, 523 U.S. 614, 621 (1998); United States v. Mikalajunas, 186 F.3d 490, 492 (4th Cir. 1999); United States v. Harris, 183 F.3d 313, 317 (4th Cir. 1999). This is the rule of procedural default which is neither a statutory nor constitutional requirement but a doctrine devised to conserve judicial resources. Massaro v. United States, 538 U.S. 500 (2003)(ineffective assistance of counsel claims may be brought in collateral proceedings under § 2255 whether or not petitioner could have raised the claim on direct appeal).

Whether a petitioner has demonstrated cause for a procedural default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Here, Petitioner did not and cannot so demonstrate.

In addition, to establish "actual prejudice" for "errors" to which the petitioner had not objected at trial or sentencing, the petitioner bears the burden of showing not only the "possibility of prejudice as a result of the instructional error," but an "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, at 170. This "cause" and "actual prejudice" standard presents "a significantly higher hurdle" than the "plain error" standard that is applied on direct appeal. Frady at 166. Here, the Petitioner presents nothing to overcome the significantly higher hurdle. In fact, the Petitioner can point to no fact to establish that he suffered any actual prejudice resulting from any of the alleged errors he should have raised on direct appeal.

In the absence of "cause" and "prejudice" excusing the procedural default, a court may still review the merits of a case if a petitioner could show "actual factual innocence" (i.e., that the petitioner did not commit the crime at all).

Bousley, at 623 ("actual innocence" means factual innocence, not mere legal insufficiency); Sawyer v. Whitley, 505 U.S. 333, 339 (1992). In other words, "'in light of all the evidence,' "it is more likely than not that no reasonable juror would have convicted him." Harris, 183 F.3d at 318, citing Schlup v. Delo, 513 U.S. 298, 327-28 (1995). The Petitioner has failed to do because based on the overwhelming evidence presented at trial, it cannot be said that "no" reasonable juror would have convicted him.

The Petitioner has also alleged ineffective assistance of counsel on four grounds in that counsel: (1) deprived him from testifying on his own behalf, as requested; (2) failed to request the two level reduction for acceptance of responsibility; (3) failed to object to the reasonable doubt instructions; and (4) erroneously advised him that the Court would "double" his sentence if he won his appeal.

Claims of ineffective assistance of counsel are evaluated by the two-pronged test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 68788 (1984). The first prong addresses counsel's professional competence. To meet this standard, a defendant must demonstrate that, in light of all the circumstances as they appeared at the time of the conduct, "counsel's representations fell below an objective standard of

reasonableness," i.e., "prevailing professional norms." Strickland, 466 U.S. at 687-88.

However, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689-90; United States v. Terry, 366 F.3d 312, 31618 (4th Cir. 2004); Matthews v. Evatt, 105 F.3d 907, 919 (4th Cir. 1997). For a defendant to overcome this presumption, "the analysis of counsel's performance typically must be comprehensive; i.e., not narrowly limited to a review of counsel's failings." See Strickland, 466 U.S. at 689. The Supreme Court has cautioned that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. The Court noted in particular that the reasonableness of a counsel's actions often depend on "informed strategic choices made by the defendant and on information supplied by the defendant." Id. at 691.

To satisfy the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See Strickland, 466 U.S. at 694. In other words, a defendant must affirmatively prove prejudice that is so serious as to have deprived him of a fair trial, a trial whose result is

unreliable. See id. Errors in a Sentencing Guidelines determination, resulting in an increased prison term, have been found to establish Strickland prejudice. Glover v. United States, 531 U.S. 198, 200 (2001).

"Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Strickland, 466 U.S. at 700. Because "[t]he defendant bears the burden of proving Strickland prejudice," if a defendant fails to meet this burden, "a reviewing court need not consider the performance prong." See Fields v. Attorney Gen. Of Md., 956 F.2d 1297 (4th Cir. 1992); see also Strickland, 466 U.S. at 697; Terry, 366 F.3d at 315; Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

If a defendant specifically asks his attorney to file an appeal and the attorney fails to do so, irrespective of the possibility of success on the merits, it is per se ineffective assistance of counsel. United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995). "A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).

However, "[w]here a defendant does not expressly ask counsel to file an appeal, courts engage in a different analysis." United States v. Purcell, 667 F. Supp.2d 498, 514

(E.D. Pa. 2009). In such a case, the issue of whether counsel has performed deficiently is "best answered by first asking whether counsel in fact consulted with the defendant about an appeal. By 'consult' the Court means advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes." Roe v. Flores-Ortega, 528 U.S. at 470-471. "If counsel has not consulted, the court must ask whether that failure itself constitutes deficient performance." Id.

The Court in Flores-Ortega held that counsel only has a constitutional duty to consult with a defendant about an appeal in two situations: (1) where there is a reason to think that a rational defendant would want to appeal (i.e., there are potential grounds for appeal), or (2) where this particular defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 471-472. If counsel's failure to file an appeal in either case is deficient performance, the defendant must still show the second prong of the Strickland test: prejudice. Id. at 471. "Evidence that a defendant sufficiently demonstrated to counsel his interest in an appeal may prove deficient performance, but it alone is insufficient to establish that he would have filed the appeal had he received counsel's advice." Id. The defendant bears the burden to establish that "there is a reasonable probability that, but for

counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id.

First, two of Petitioner Sandoval's claims should be denied because of procedural default: insufficient evidence to convict and the "exception clause of 924(c)" requires the sentence for the gun count to be dismissed. The Petitioner cannot establish any cause for failing to raise either of those issues on direct appeal or actual prejudice for failing to do so. In addition, Petitioner fails to allege any facts upon which the Court can conclude that he is entitled to relief. Post-trial, self-serving conclusory statements, without accompanying facts, made by a prisoner in a § 2255 petition should be viewed with great suspicion and not given much deference. A Court may discount "unsupported, conclusory statements" in an affidavit. United States v. Perez, 393 F.3d 457, 464 (4th Cir. 2004). The Petitioner has failed to meet his burden of proof by a preponderance of the evidence and these claims, which have been waived, should be dismissed.

Petitioner Sandoval first argues that his sentence should be vacated, set aside, or corrected because there was insufficient evidence to convict him. While Petitioner does not articulate whether or not he is referring to both counts of conviction, Petitioner specifically cites to United States v. Bailey, 516 U.S. 136 (1995), as support for this claim. In

addition, Petitioner's Motion states erroneously that he "plead guilty in a timely manner as to the drug charged, but cannot plead guilty for a crime that he did not commit." See also counsel's closing argument: "We told you from the start we don't contest that Mr. Sandoval distributed drugs. So your focus in whether he ever possessed a gun in furtherance of drug distribution." In light of all that, it can be presumed that Petitioner is only claiming there was insufficient evidence to convict him of the gun count, pursuant to 18 U.S.C. § 924(c). Petitioner avers no further facts or argument. However, the Government assumes, based on the argument of counsel at trial and Petitioner's brief reference to Bailey that the essence of the Petitioner's argument is that by simply receiving the two guns as collateral for fronted drugs, he did not actively "use" the guns during the drug conspiracy. Petitioner is procedurally barred from raising this claim in this § 2255 Motion. The claim is without merit.

In <u>United States v. Bailey</u>, the Supreme Court dealt with a previous version of 18 U.S.C. § 924(c) that imposed a five-year minimum term of imprisonment upon any person who "during and in relation to any crime of violence or drug trafficking crime… uses or carries a firearm." <u>Bailey</u>, 516 U.S. at 138. The Court determined that evidence of the proximity and accessibility of a firearm to drugs was not sufficient to support a conviction for

the "use" of a firearm during and in relation to a drug trafficking offense under § 924(c)(1). Id. at 150. In order to "use" a gun under the statute, the individual had to "actively employ[] the firearm during and in relation to the predicate crime." Id.

In response to Bailey, Congress amended 18 U.S.C. § 924(c) in 1998 to criminalize the "possession" of a firearm "in furtherance of" a crime of violence or a drug trafficking crime. See 18 U.S.C. § 924(c)(1) (2006). The Fourth Circuit has held that the phrase "in furtherance of" now requires the Government to "present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002). A firearm furthers a drug trafficking crime if it "enable[s] a drug trafficker to ensure that he collects during a drug deal." Id.

In 2007, the Supreme Court held that a person who trades his drugs for a gun does not "use" a firearm "during and in relation to . . . [a] drug trafficking crime" within the meaning of 18 U.S.C. § 924(c). Watson v. United States, 552 U.S. 74, 83 (2007). While Watson stands for the principle that the passive receipt of a gun for drugs is not an active employment as contemplated by the "use" of a firearm prohibited by § 924(c), the Watson case simply did not extend to the illegal possession

of a firearm in furtherance of drug trafficking. See United States v. Woods, 271 Fed.Appx. 338, 2008 WL 795312 (4th Cir. 2008) (unpublished opinion). Here, as in Woods, whether the Petitioner actively "used" firearms during the drug conspiracy is irrelevant because Petitioner was not charged with "use" of a firearm. Even if Petitioner only passively received guns for drugs, he obviously "possessed" firearms, under any meaning of the term, in violation of § 924(c) when he obtained them in the course of his drug conspiracy.

In this case, there was more than sufficient evidence to support the jury's finding that Petitioner possessed a firearm in furtherance of a drug trafficking crime. At trial, there was testimony that two guns were given as collateral. Guns furthered this drug conspiracy by providing the liquidity to keep it going. An individual who later became a police informant (hereafter, the CI) testified that he did not have enough money to purchase drugs, and so he provided Petitioner Sandoval with two handguns (a Smith and Wesson 9mm pistol and a Heckler and Koch .40 caliber pistol) and jewelry as collateral for the initial drug purchases. During a May 19, 2008, meeting between the CI and Sandoval, the CI provided Sandoval with the final payment on the initial drug purchases and Petitioner returned the Smith and Wesson 9mm pistol.

Given this evidence, the jury clearly concluded that Sandoval used the gun to ensure that he collected money on his drug deal, and thus that Sandoval possessed the firearm in furtherance of drug trafficking. In any event, it was for the jury to decide whether Sandoval possessed a firearm in furtherance of drug trafficking. They did so, and their verdict is amply supported by the evidence.

In this case, the Petitioner has failed to raise any claim of actual, factual innocence on direct appeal and has therefore waived it. At his sentencing, the Petitioner asked the Court to have pity on him and stated "I know I did wrong, and I deeply regret what I have done." It is also unclear whether or not the Petitioner denies his possession of the guns or simply that he actively used them during the drug conspiracy. In either case, the Petitioner cannot now demonstrate actual factual innocence, i.e., that he did not possess firearms in furtherance of the drug conspiracy. The Petitioner was recorded during hand to hand drug deals with the CI and on two separate occasions, returned guns to the CI that the Petitioner held as collateral.

Typically, the "actual innocence" test will be invoked by a prisoner based on newly discovered evidence - that is, specific factual material purporting to demonstrate his innocence. See Calderon v. Thompson, 523 U.S. 538, 559 (1998) ("To be credible, a claim of actual innocence must be based on reliable evidence

not presented at trial."). Here, the Petitioner does not present any newly discovered evidence to suggest that he is not the one who committed the crimes for which he was convicted or assert he is not the one who committed the gun offense (i.e., factual innocence). Instead, Petitioner makes a legal argument that he did not actively "use" the guns when he agreed to accept them as collateral for fronted drugs.

The Petitioner also advances, for the first time, an argument concerning the "exception clause of section 924(c)." While the relief sought and the reasons for the argument are not clear from the pleading, it appears that the Petitioner is asking the Court to vacate the five year mandatory minimum term of imprisonment for Count 2. The essence of the Petitioner's argument is that the Court is not required to sentence the Petitioner to a mandatory consecutive five year term of incarceration for Count 2, the § 924(c) conviction, because he received a mandatory minimum 60 month sentence for Count 1, the drug conspiracy. In support of this argument, the Petitioner refers to Whiley v. United States, 529 F.3d 157 and Williams v. United States, 558 F.3d 166 (2nd Cir. 2009). The Petitioner contends that the provision of § 924(c) which states "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this section or by any other provision of law" permits the Court to impose a sentence without regard to the

mandatory consecutive sentence provisions of §924(c). See <u>United States v. Williams</u>, 558 F.3d 166 (2nd Cir. 2009), petition for certiorari filed 78 USLW 3254 (Oct. 20, 2009). But see <u>United States v. Studifin</u>, 240 F.3d 415, 423 (4th Cir.2001).

The Second Circuit is alone in interpreting the "except" clause to preclude a mandatory minimum consecutive sentence under § 924(c) if the defendant is also convicted of any other offense that subjects him to a greater mandatory minimum sentence whenever the two offenses "aris[e] from the same criminal transaction or operative set of facts." <u>United States v. Williams</u>, 558 F.3d 166, 171 (2d Cir. 2009). Every other circuit—including the Fourth Circuit—has rejected the Second Circuit's position. <u>See</u>, <u>e.g.</u>, <u>United States v. Segarra</u>, 2009 WL 2932242 (11th Cir. Sept. 15, 2009) (per curiam); <u>United States v. Abbott</u>, 574 F.3d 203, 208-09 (3d Cir. 2009), <u>petition for cert</u>. <u>pending</u>, No. 09-479 (filed Oct. 19, 2009); <u>United States v. London</u>, 568 F.3d 553, 564 (5th Cir. 2009), <u>petition for cert. pending</u>, No. 09-5844 (filed Aug. 11, 2009); <u>United States v. Pulido</u>, 566 F.3d 52, 65 & n.6 (1st Cir. 2009), <u>petition for cert. pending</u>, No. 095949 (filed Aug. 14, 2009); <u>United States v. Easter</u>, 553 F.3d 519, 525 (7th Cir. 2009) (per curiam), <u>petitions for cert. pending</u>, No. 08-9560 (filed Mar. 26, 2009), and No. 08-10584 (filed May 20, 2009); <u>United States v. Jolivette</u>, 257 F.3d 581, 586-87 (6th Cir. 2001); <u>United States</u>

v. Studifin, 240 F.3d 415, 421-24 (4th Cir. 2001); United States v. Alaniz, 235 F.3d 386 (8th Cir. 2000), cert. denied, 533 U.S. 911 (2001).

Studifin, is binding on this Court and Petitioner's belated claim, if not procedurally defaulted, has no merit.

Petitioner argues that his sentence should be vacated, set aside, or corrected because his counsel rendered ineffective assistance of counsel. Petitioner alleges four ways that counsel rendered ineffective assistance: (1) his attorney deprived him of his right to testify; (2) his attorney failed to request a reduction for acceptance of responsibility; (3) his attorney failed to object to the reasonable doubt instructions; and (4) his attorney advised him "that if I appeal the conviction and win, the Court may give me 20 years instead of 10".

The Petitioner argues that counsel deprived him of testifying on his own behalf, "as requested." In support of this contention, Petitioner confusingly argues the "exception Clause" of § 924(c) "that provide that an offense which carries a five years mandatory minimum sentence is otherwise provide by any provision of law, please see Memorandum of law, on this issue alone attach herein." In essence, the Petitioner appears to argue that counsel was ineffective because he wanted to testify but that counsel would not let him.

The Supreme Court has held that a defendant's right to testify at his criminal trial, although not found in the Constitution, "has sources in several provisions of the Constitution." Rock v. Arkansas, 483 U.S. 44, 51 (1987); Sexton v. French, 163 F.3d 874, 881 (4th Cir. 1998); United States v. Teague, 953 F.2d 1525, 1530 (11th Cir. 1992). This right is not unlimited and does not include the right to commit perjury. Id. at 1531, citing Nix v. Whiteside, 475 U.S. 157 (1986).

Trial counsel, not the court, has the primary responsibility for advising the defendant of his right to testify (or not testify) and for explaining the tactical implications of doing so or not. Sexton, at 881; Teague, at 1532. However, it is "ultimately for the defendant himself to decide." McTeague, at 1533. The burden of ensuring that a criminal defendant is informed of the nature and existence of the right to testify rests upon trial counsel and the burden shouldered by trial counsel is a component of effective assistance of counsel. Id. As such, an ineffective assistance of counsel claim based on counsel's failure to let petitioner testify must satisfy the two-prong Strickland test of performance and prejudice. Teague, at 1534.

In evaluating counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

Strickland at 689. The analysis must also consider "counsel's performance within the context of the circumstances at the time of the alleged errors." Sexton, at 882; Teague, at 1535. "A review of ineffective assistance of counsel claims must be made from the perspective of defense counsel, taking into account all circumstances of the case as they were known to counsel *at the time of the representation*." Teague, at 1535.

It appears from the Petitioner's sparse allegations that he was, in fact, advised of his right to testify in his own behalf. The Petitioner merely asserts that he was "deprived" from testifying "as requested" but provides no facts to support that assertion. The Petitioner declines to explain how he was "deprived" or prevented by counsel from testifying. The Petitioner does not refer to any discussions that he may have had with counsel in which he expressed why he wanted to testify or what the nature of his testimony would have been at trial. Without any of that information, the Petitioner has failed to meet his burden of proof.

Not only is the present record bereft of any factual allegations to support Petitioner's claim that counsel "deprived" him from testifying, but the trial record supports the inference that there were many sound reasons why Petitioner himself would have chosen -- in consultation with his trial counsel -- not to take the stand. At trial, the theory of

defense was to attack the government witnesses, especially the CI. In its case in chief, the defense called two law enforcement officers solely to impeach the CI by his prior statements. It is entirely reasonable to infer that, in this case, counsel advised Petitioner that he would not gain anything by testifying in his own behalf and could subject himself to impeachment on cross-examination if he chose to do so. It is highly likely that defense counsel urged Petitioner not to testify and avoid the risk that the jury would not believe his testimony or that his proposed testimony would not aid in gaining an acquittal. It is also reasonable, in light of the fact that the Petitioner cannot articulate what, if anything, he would have testified about at trial, that he agreed with the advice of counsel and decided not to testify. Moreover, Sandoval's trial counsel affirms, under penalty of perjury, that she and co-counsel Watson "met with Sandoval on numerous occasions in preparation for trial at which time we discussed defense strategy. Both before and during the trial, we specifically discussed with Mr. Sandoval his right to testify, and Mr. Sandoval decided not to exercise his right to do so."

The Petitioner fails to sustain his burden of proof and provides no facts upon which to conclude anything other than he was informed of his right to testify by trial counsel both before and during trial. There are no allegations or facts

presented by the Petitioner upon which to conclude that anyone interfered with his choice not to testify. In light of counsel's sworn statement that Sandoval decided not to exercise his right to testify, the logical inference is that Petitioner concluded that he did not want to assume the inherent risks that the jury would disbelieve him, find him not credible, conclude the opposite of his testimony was the truth or view any false explanatory statements as substantive evidence of his guilt. See Teague, at 1535; United States v. Sloan, 36 F.3d 386 (4th Cir. 1994); United States v. Dunnigan, 950 F.2d 149 (4th Cir. 1991).

Assuming there was deficient performance where counsel "deprived" the Petitioner from testifying, despite his expressed desire to do so, the Petitioner must still establish that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694. Relief can only be granted on the second prong of the Strickland test where the Petitioner can show "the result of the proceeding was fundamentally unfair or unreliable." Id. at 369. Here, the Petitioner cannot show that the result of this trial was fundamentally unfair or unreliable.

In this case, the FBI had video and audio recordings of the CI meeting with Sandoval on multiple occasions to purchase drugs and during two separate transactions, the CI received a gun from

Sandoval. In light of the recorded meetings and seized drugs and guns, the defense strategy at trial was to argue that Sandoval did not possess guns in furtherance of the drug conspiracy. While the government had video and audio recordings of Sandoval giving guns to the CI, the government did not have any recordings of the CI giving the guns to Sandoval (as this pre-dated the CI's cooperation). As a result, the defense attacked the credibility of the Government's evidence, especially the CI, who testified that he previously provided guns to Sandoval as collateral for fronted drugs. The defense also argued that the Petitioner did not actively use the firearms.

The defense called two law enforcement witnesses to essentially impeach the CI through his prior inconsistent statements. It also introduced two Court Orders in an effort to impeach the CI and a "spliced" recording of the Government's recorded meetings. All of the Government's evidence was subject to cross-examination and the defense had the opportunity to question the reliability of that evidence. The Petitioner presents no evidence that the result of the trial was fundamentally unfair or unreliable.

In addition, the Petitioner does not even allege what the substance of his testimony would have been at trial if he had testified in his own defense or how that testimony would have

assisted him in gaining acquittal (or even a lesser sentence). Indeed, the only thing the Petitioner could have testified to was: (1) that he did not actively use the guns when he received them as collateral for fronted drugs and later returned them, or (2) that he did not possess the firearms in furtherance of the drug conspiracy. Counsel argued both at closing argument. However, these are legal defenses and not a claim of actual, factual innocence. Moreover, the testimony denying "active use" of the guns is irrelevant where the Petitioner was not charged with using the guns during the drug conspiracy but possessing them in furtherance of said conspiracy.

In light of the fact that law enforcement recovered two firearms from the Petitioner during consensually recorded meetings with the CI in May and June of 2008, and the CI's testimony that he gave both firearms to the Petitioner as collateral for fronted drugs, it is unlikely that the Petitioner's testimony that he did not use the guns would have significantly aided him or led to a different outcome.

Petitioner Sandoval argues that his sentence should be corrected because counsel failed to request a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). In support, Sandoval states, in entirety, that "Petitioner's plead [sic] guilty in a timely manner as to the drug charged, [sic] But cannot plea guilty for a crime that he did not commit."

However, the Petitioner did not enter a guilty plea before the court to the drug charge and elected to proceed to trial on March 31, 2009, on all counts in the Indictment. Moreover, "[b]arring extraordinary circumstances," claims of non-constitutional error in the application of the Sentencing Guidelines cannot be raised in a Section 2255 Motion. United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999).

Under § 3E1.1(a), a defendant is eligible for a two-level reduction in his offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a) (2010). Generally, a defendant demonstrates acceptance of responsibility if he "truthfully admit[s] the conduct compromising the offenses of the conviction." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a) cmt. n.1(a) (2010). This reduction "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a) cmt. n.2 (2010). In addition, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." Id. Here, the Petitioner pleaded not guilty and elected to proceed to trial. After trial, the Petitioner stated at sentencing that he was sorry but still filed a § 2255

Petition attacking his conviction on the gun count. It appears that the Petitioner is not asserting his actual innocence or contesting his guilt on the drug conspiracy charge.

The Court should reject the Petitioner's claim because there are no "extraordinary circumstances" excusing the failure to raise this issue. Section 2255 provides relief for cases in which "the sentence was in excess of the maximum authorized by law." The Petitioner's sentence of 120 months was not in excess of the maximum sentence of forty years on Count 1 (drug conspiracy) or twenty years on Count 2 (gun count).

In addition, the Petitioner fails to prove either prong of the Strickland test for this claim. First, Sandoval does not allege any facts to demonstrate that his counsel's performance at sentencing "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. To the contrary, counsel's decision not to request a reduction for acceptance of responsibility after a jury trial was very likely based on her reasonable assessment that since the Petitioner elected to contest the charges and put the Government to its burden of proof at trial, he would not qualify for such a reduction. This assessment would have been objectively reasonable because there is no evidence that the Petitioner ever timely accepted responsibility for his actions before or during trial. While the Petitioner may now acknowledge his guilt about

the drug charge, he certainly did not so acknowledge in open court on the record. Therefore, the case proceeded to trial on all counts.

The Petitioner also fails to show any prejudice. Sandoval has not demonstrated that "but for" his counsel's failure to request a reduction, he would have received a lower offense level. See Strickland, 466 U.S. at 694. Sandoval's decision to go to trial, his resulting conviction, and his continuing pronouncement of innocence on the drug conspiracy charge illustrate that he has not "clearly demonstrate[d] acceptance of responsibility for his offense." Moreover, the fact of a sentencing guideline calculation does not rise to a constitutional error to be raised in a § 2255 Petition.

In his Motion, the Petitioner claims that his counsel was ineffective for failing to object to the reasonable doubt jury instructions. However, the Petitioner does not allege why this instruction was deficient or contrary to law or how his counsel erred by failing to object to this instruction. The Petitioner does not allege that the given instruction was incomplete, misleading or an inaccurate statement of the law. "Where the error alleged is an incomplete or omitted instruction, a habeas corpus petitioner bears an especially heavy burden, because an incomplete or omitted instruction is less likely to be prejudicial than an overt misstatement of the law." Rivero v.

McNeil, 2010 WL 322039 (S.D. Fla. 2010). Nor does the Petitioner allege what instruction the Court should have given in its place.

While the Court's instruction did not define reasonable doubt, there is no legal requirement that the Court do so. United States v. Walton, 207 F.3d 694 (4th Cir. 2000); United States v. Williams, 152 F.3d 294, 298 (4th Cir. 1998) (the trial Court is not required to define reasonable doubt as a matter of course so long as the jury is instructed that a defendant's guilt must be proven beyond a reasonable doubt; the Constitution does not obligate a court to further define the standard). The Fourth Circuit has frequently expressed that efforts to define reasonable doubt are likely to confuse rather than clarify the concept, and has repeatedly held that a district court need not, and in fact should not, define the term "reasonable doubt" even upon request. United States v. Reives, 15 F.3d 42, 45 (4th Cir.1994) ("[W]e have consistently and vigorously condemned the attempts of trial courts to define reasonable doubt."); United States v. Adkins, 937 F.2d 947, 950 (4th Cir.1991 (expressing a "categorical disdain" for attempts at defining reasonable doubt).

Here, the district court instructed the jury on reasonable doubt as follows:

> Now, the burden is always on the prosecution to
> prove guilt beyond a reasonable doubt. This
> burden never shifts to a defendant for the law
> never imposes upon a defendant in a criminal case
> the burden of calling any witnesses or producing
> any evidence.

This language is almost verbatim from the standard jury

instruction found in 1A O'Malley, Grenig, and Lee, Federal Jury

Practice and Instructions, Section 12.10. The Court further

instructed that:

> The law presumes a defendant to be innocent of a
> crime. Thus, a defendant, although accused, begins
> the trial with a clean slate, with no evidence against
> him, and the law permits nothing but legal evidence
> against him, and the law permits nothing but legal
> evidence presented before the jury to be considered in
> support of any charge against the accused. So the
> presumption of innocence alone is sufficient to acquit
> unless you are satisfied beyond a reasonable doubt of
> the defendant's guilt after a careful and impartial
> consideration of all of the evidence in the case.

It is *per se* reversible error to give a reasonable doubt

instruction that arguable decreases the government's burden of

proof. Sullivan v. Louisiana, 508 U.S. 275 (1993). Here, this

instruction does not alter the government's burden of proof, nor

is there an impermissible shifting of the government's burden.

This instruction accurately states the law. Moreover, it is not

error for the trial court to refuse to give a definition of

"reasonable doubt" even when the definition is requested by the

jury. United States v. Reives, 15 F.3d 42, 46 (4th Cir. 1994).

Simply put, counsel was not ineffective for failing to object to

the giving of this instruction, which was in accord with the law.

While the Petitioner does not directly raise this claim, it appears from his motion that the petitioner seeks to argue that counsel was ineffective for failing to file an appeal on his behalf. In support of that claim, Petitioner states that counsel "told Mr. Sandoval that the Court will 'double' his sentenced [sic], if he win his appeal and go back to the same Judge." The Petitioner also alleges that he did not file a direct appeal in this case "because counsel told me that if I appeal the conviction and win the appeal the court may give me 20 years instead of the ten (10); and this Advised [sic] Rendered Ineffective Assistance of Counsel, and violated by Sixth Amendment Right to Effective Assistance of Counsel."

It is well settled that failure to file a requested appeal is per se ineffective assistance of counsel, irrespective of the possibility of success on the merits. See Foster, 68 F.3d at 88 and Flores-Ortega, 528 U.S. at 479. However, when "the petitioner agrees that an appeal would be fruitless, his counsel is under no obligation to pursue it." Strong v. Johnson, 495 F.3d 134, 138 (4th Cir. 2007); Flores-Ortega, at 479.

However, the Petitioner never claimed that he asked counsel to file an appeal or even that he wanted to file an appeal after his conviction at trial. Indeed, at sentencing, the Petitioner's

statements to the court acknowledged his own guilt: I know I did wrong, and I deeply regret what I have done. In addition, the sworn statement of trial counsel affirms that she met with Mr. Sandoval four days after his sentencing hearing at which time we discussed his right to appeal his conviction and sentence. After our discussion, Mr. Sandoval decided not to appeal. There is nothing in the record to establish that Sandoval indicated his interest in appealing his conviction or that he directed counsel to do so.

Petitioner has acknowledged in filing the instant § 2255 Motion, that he did not file a direct appeal. To explain why he failed to do so, the petitioner seems to claim that it was based on statements made by counsel that his case would be returned to the same judge and that, if successful, the Petitioner could be looking at 20 years in prison instead of ten. The Petitioner presents no facts upon which to conclude that he ever directed counsel to file an appeal and that despite that request, counsel failed to do so.

Assuming that the Petitioner did not expressly ask counsel to appeal his case, the issue of counsel's deficient performance must be analyzed by determining whether or not counsel actually consulted with the petitioner to determine his wishes. Counsel must only advise the defendant of the advantages and disadvantages of taking an appeal where there are potential

grounds for appeal and there is a reason to believe that a rational defendant would want to do so or if the particular defendant reasonably demonstrated he was interested in appealing. Flores-Ortega at 471.

Here, the Petitioner does not assert that he demonstrated, in any way, he was interested in appealing. Petitioner's reference to specific statements allegedly made by defense counsel about the consequences of filing an appeal indicate that counsel did, in fact, consult with the Petitioner about whether or not he wanted to appeal his conviction. Moreover, the sworn statement of defense counsel affirms that she met with Sandoval after sentencing to discuss his right to appeal and that after their discussion, he decided not to appeal. As Petitioner claims, if the appeal had been successful, then the case would have been remanded to the district court for retrial or re-sentencing. In that case, as defense counsel purportedly advised, it is possible that the Petitioner could face a harsher sentence after retrial. Texas v. McCullough, 475 U.S. 134 (1986).

Assuming that counsel advised the Petitioner that, even if successful on appeal, he risked the imposition of a significantly harsher sentence after a retrial, it is reasonable to infer that the Petitioner, after weighing the risks and advantages of an appeal, decided not to pursue an appeal. In

light of the foregoing, the fact that no appeal was filed, without more, does not automatically lead to the conclusion that counsel was per se ineffective.

Even if the Court were to find that the Petitioner had established that there was deficient performance in this case (i.e., not filing an appeal as directed or failure to consult about an appeal), the Petitioner must still meet his burden of proof that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. This the Petitioner has failed to do. Indeed, the filing of a § 2255 Motion seven months after conviction, and the Petitioner's contrite statement at sentencing that he knew he did wrong, do not support the conclusion that the petitioner would have timely appealed "but for" counsel's alleged errors.

For these reasons Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence should be denied.

Petitioner has filed a Motion To Amend the original § 2255 Motion. The Motion To Amend was filed September 30, 2010. The request to amend seeks to add new claims more than one year after his conviction became final. This Motion To Amend should be denied.

_____/s/_____
Claude M. Hilton
United States District Judge

Alexandria, Virginia
December *17* , 2010